DEAN STRAUSBAUGH, J., retired, of the Tenth District Court of Appeals, sitting by assignment.

**In re CUPP.**

Court of Claims of Ohio,
Victims of Crime Division.

No. V94–74313.

Decided March 21, 1997.

*Mark Philip Ort,* for the applicant.

*Betty D. Montgomery,* Attorney General, for the state.

OPINION AND ORDER OF THREE-COMMISSIONER PANEL.

This appeal came to be heard before this panel of three commissioners on November 20, 1996 upon applicant Barry S. Cupp's August 13, 1996 objection to the July 30, 1996 decision of the single commissioner.

On October 30, 1995, the applicant was granted an award of reparations for work loss in the amount of $2,251.96. The applicant filed a supplemental reparations application on August 14, 1995, seeking to recover additional work loss.

On July 30, 1996, the single commissioner denied the applicant's claim pursuant to R.C. 2743.60(D), R.C. 2743.72(A), and *In re Hudnall* (1995), 91 Ohio Misc.2d 115, 698 N.E.2d 113, because the applicant signed an insurance release freeing the offender from all claims arising out of the criminally injurious conduct. The single commissioner found that the applicant's execution of the release destroyed the state of Ohio's right to subrogation against the offender and operated as bar to the applicant's participation in the Victims of Crime Program. This is the decision from which the applicant takes the present appeal.

The applicant, the applicant's counsel, and the Attorney General attended the hearing and presented oral argument and testimony for this panel's consideration.

From review of the claim file, and with full consideration of the oral arguments and testimony presented at the hearing, this panel makes the following determination.

R.C. 2743.72(A) sets forth the state of Ohio's subrogation rights with regard to reparations awards:

"(A) If an award of reparations is made under sections 2743.51 to 2743.71 of the Revised Code, the state, upon the payment of the award or a part of the award, is subrogated to all of the claimant's rights to receive or recover benefits or advantages for economic loss for which an award of reparations was made from a source that is a collateral source or would be a collateral source if it were readily available to the victim or claimant. The claimant may sue the offender for any damages or injuries caused by the offender's criminally injurious conduct

and not compensated for by an award of reparations. The claimant may join with the attorney general as co-plaintiff in any action against the offender."

In *Hudnall, supra*, the applicant in that claim was injured when she was struck by a car driven by an intoxicated driver. The *Hudnall* applicant incurred work loss in the amount of $1,673.98 and benefited from a $12,500 insurance settlement with the offender's insurance company. The applicant received net proceeds in the amount of $8,313.34 from the insurance settlement, following payment of attorney fees. As part of the insurance settlement, the applicant signed a full and final release relinquishing all claims against the offender and the offender's insurance company. The release stated that the insurance settlement was for bodily injury and did not specify what portion of the settlement, if any, was for pain and suffering, as opposed to economic losses.

The single commissioner denied the *Hudnall* applicant an award of reparations pursuant to R.C. 2743.60(D) based on collateral source availability, since the applicant's insurance recovery exceeded her economic damages. The *Hudnall* applicant appealed the decision of the single commissioner to a panel of three commissioners. The panel found that the applicant had failed to prove, by a preponderance of the evidence, that she incurred economic loss not reimbursed by collateral sources. The applicant then appealed the panel's decision to a judge of the Court of Claims, asserting that the panel erred by failing to consider at least a portion of her insurance award as attributable to pain and suffering. The applicant also complained that the panel of commissioners should have referred the claim to the Attorney General for apportionment of the insurance award.

A judge of the Court of Claims heard the claim on appeal and upheld the panel's decision, stating, "In this matter, the panel found, upon review of the evidence, that applicant had not presented sufficient evidence to meet her burden to prove that she sustained economic loss not offset by collateral recoveries. This court cannot find the panel's order to be unreasonable or unlawful." *Id.*, 91 Ohio Misc.2d at 117, 698 N.E.2d at 113–114.

After deciding that the panel's decision was neither unreasonable nor unlawful, the judge stated the following:

"Further, since applicant executed a complete release in the settlement agreement, the Attorney General is precluded from exercising the right of subrogation on behalf of the reparations fund against the driver. By such action, the court finds and concludes that applicant has waived any rights to participate in the Victims of Crime Program." *Id.*, 91 Ohio Misc.2d at 117, 698 N.E.2d at 114.

The judge's order in the *Hudnall* decision approved, affirmed, and adopted the panel's order. Judgment was entered for the applicant, but no award was granted due to collateral source availability. In addition, the order in *Hudnall*

was entered without prejudice to the applicant's right to file a supplemental reparations application if the applicant incurred unreimbursed economic loss.

In the present claim, the applicant was injured in an automobile accident wherein the applicant and another person were passengers in a car driven by Danny Williams that went out of control. The offender was determined to be "HBD [had been drinking] ability impaired" by the police officers on the scene and had a blood-alcohol content of ".105 percent." The applicant suffered extensive injuries as a result of the incident and missed several months of work.

The applicant received Medicaid benefits following the criminally injurious conduct that fully covered his medical bills, which exceeded $70,000. Therefore, the applicant seeks reimbursement only for the work loss he has incurred as a result of the criminally injurious conduct.

The offender in this claim was insured by State Auto Insurance and carried the state minimum amount of automobile liability insurance, from which the applicant received a settlement in the amount of $12,500. As part of the settlement with the offender's insurance company, the applicant signed a full and final release on November 17, 1994. The terms of the release fully and finally released the offender and the offender's insurer from any and all liability arising out of the July 5, 1994 criminally injurious conduct.

On October 30, 1995, the single commissioner granted the applicant an award of reparations in the amount of $2,244.46. This amount reflected the applicant's total work loss incurred between July 4, 1994 and May 13, 1995 ($16,149.96), less the full amount of the insurance settlement received from the offender's insurer ($12,500), less a six-month cash allotment from the Fayette County Department of Human Services ($701), less a five-month supply of food stamps ($697), less recoupment of the $7.50 filing fee pursuant to R.C. 2743.57(B).

On August 14, 1995, the applicant filed a supplemental reparations application seeking reimbursement for work loss incurred from May 13, 1995 through the date of that application.

On July 30, 1996, the single commissioner denied the applicant's supplemental claim pursuant to R.C. 2743.60(D), R.C. 2743.72(A), and *In re Hudnall, supra.* The panel notes that the single commissioner included R.C. 2743.72(A) as a basis for denying the claim; however, the single commissioner did not order repayment of the previously granted award of reparations pursuant to R.C. 2743.72(A).

At the hearing, the applicant testified that he collected the maximum available award from the offender's insurance company and that the attorney who was representing him in that civil action advised him to sign the corresponding release, with full knowledge of the applicant's participation in the Victims of Crime Program. The applicant also testified that the investigator at the Attor-

ney General's Office with whom he was working knew of the impending civil settlement and did not advise him to refrain from signing the release or accepting the insurance monies. The applicant stated that the Victims of Crime pamphlets he had obtained advised him that the program would pay for economic losses in excess of collateral source recoveries, but failed to inform him that signing an insurance release would deprive him of his eligibility to participate in the program. The applicant also stated that if signing such a release did disqualify him from participating in the program, he believed the information in the pamphlets was misleading.

The applicant also testified that he contacted the Attorney General's Office after receiving the supplemental finding of fact and recommendation and inquired about the number of times the state of Ohio had pursued collateral source subrogation. The applicant stated that in response to his inquiry, he was advised that the Attorney General's Office could not find one instance in the past five years in which the Attorney General's office had pursued subrogation.

The applicant's attorney argued that the *Hudnall* case was distinguishable from the applicant's case because the applicant in *Hudnall* did not incur economic loss in excess of her insurance recovery. The applicant's attorney also asserted that the holding in *Hudnall* should be applied prospectively only and, therefore, not to the applicant's claim.

The applicant's attorney also emphasized the circular problem that arises in *Hudnall* cases, in which applicants are forced to make a decision between two equally unappealing and harsh results: sign an insurance release and forfeit eligibility for the Victims of Crime Program, or fail to pursue that collateral source and be denied an award of reparations pursuant to R.C. 2743.60(H).

The applicant's attorney also noted that the judicial order in *Hudnall* allowed for the filing of a supplemental reparations application if the applicant in that claim incurred unreimbursed allowable expense. The attorney argued that *Hudnall* does not, therefore, preclude the present applicant from qualifying for additional awards of reparations, since his losses exceed his collateral source recoveries.

The Attorney General argued that the single commissioner properly applied *Hudnall* in the present claim. The Attorney General maintained that the signing of an insurance release that releases the offender from liability for the criminally injurious conduct destroys the applicant's eligibility for the Victims of Crime Program and that this panel need not look beyond the applicant's signature on the document to determine the effect of the release.

The interpretation of the *Hudnall* decision presented by the Attorney General and reflected in the single commissioner's decision in the present claim

focuses on the applicant's execution of the insurance release and equates the signing of the release with the destruction of the state's subrogation rights and resultant waiver of the applicant's rights to participate in the Victims of Crime Program. The single commissioner's approach to the signing of the release operates to exclude an applicant on the basis of the signed document alone, without considering the effect of the release. This panel finds that the impact of the release on the state's subrogation rights should be the determining factor in deciding whether the applicant has signed away his eligibility for participation in the Victims of Crime Program.

We find support for this approach in the case of *In re Feckner* (May 30, 1996), Ct. of Cl. No. V93–39000jud, unreported, wherein an applicant who signed a release with her own insurer to recover on her uninsured motorists policy was denied an award of reparations. The applicant's economic loss in *Feckner* was also fully reimbursed by collateral sources. In response to the applicant's argument in *Feckner* that the $55,000 settlement received from Farmers Insurance pursuant to the applicant's uninsured motorist coverage constituted reimbursement for only pain and suffering, the court stated the following:

"Regardless of the alleged intent of the parties, the effect of the settlement agreement, when read in its entirety, is to provide a full and final release for all claims against Farmers arising out of the May 8, 1991 accident. As such, the release precludes the Attorney General from exercising the state's right to subrogation under R.C. 2743.72. As stated in the case of *In re Hudnall,* by executing such a release the applicant waives the right to participate in the Crime Victims Program. Although the *Hudnall* case involved a general release for 'bodily injury' that did not state how much, if any, was designated for pain and suffering, the court finds the *Hudnall* determination extends to any release and settlement agreement, however worded, where *the effect of the document is to preclude the state's right to subrogation.*" (Emphasis added.)

The panel finds that *Feckner* is factually distinguishable from the present claim because the applicant's collateral source recovery in *Feckner* exceeded her economic losses, unlike the facts in the present claim. However, the language in *Feckner,* as emphasized above, applies to all cases where an insurance release has been signed. The aforementioned language limits the exclusion of applicants who have signed insurance releases to those instances, and only to the extent that, the execution of such release *actually destroys the state's right to subrogation.*

Therefore, pursuant to *Feckner,* we find that the effect of the release must be examined in each instance and that an applicant should be excluded from participation in the program only to the extent that the state's right to subrogation is destroyed.

In the present claim, the applicant received the maximum amount available under the terms of the offender's insurance; no additional recovery can be obtained by the applicant or the Attorney General once the policy limits are paid. Therefore, releasing the insurer from liability had no effect on the state's subrogation rights with respect to recovering against the offender's insurer. In addition, since the offender in the present claim is insolvent and judgment-proof, the release of the offender does not prejudice the state's subrogation rights with regard to the offender, as neither the applicant nor the state can recover what does not exist. The only readily available collateral source has been extinguished, and the offender does not even qualify as a readily available collateral source due to his insolvency. This panel finds that *Hudnall* does not bar an applicant from participating in the Victims of Crime Program where the only collateral source has been extinguished and no other potential sources of recovery exist. Furthermore, the $12,500 insurance recovery was used as a collateral source set off against the applicant's work loss in the first reparations award granted to the applicant, and the applicant has demonstrated continuing economic loss. Accordingly, we find that the applicant's economic loss in excess of his collateral source recovery must be paid.

We further find that the judge's decision in *Hudnall* upholding the panel's denial of that claim based on collateral source availability, as opposed to the applicant's forfeiture of eligibility, and the order language in that case, which specifically provided for the filing of a supplemental reparations application if the applicant incurred unreimbursed economic loss, demonstrates that the court did not seek to preclude recovery for applicants whose economic loss exceeds the amount of their collateral source reimbursement.

The panel notes that any other result would be unconscionable. To apply the rule of *Hudnall* as in the single commissioner's decision, and as urged by the Attorney General, places the applicant, and all similarly situated applicants, into a "Catch 22" situation, wherein obtaining an insurance recovery prevents an applicant from being eligible for an award of reparations, yet failing to pursue the available insurance settlement causes an applicant to be denied an award of reparations pursuant to R.C. 2743.60(H) for failure to avail himself or herself of a readily available collateral source.

For the foregoing reasons, the panel finds that the single commissioner's decision must be reversed, and the claim shall be remanded to the single commissioner and referred to the Attorney General for further investigation and a new finding of fact and recommendation concerning the applicant's additional economic loss. The panel notes that the entire $12,500 insurance recovery was applied as a collateral source to the applicant's work loss. In the applicant's brief, the applicant states that he incurred attorney fees in order to obtain the

insurance settlement. Since only the applicant's net recovery of the insurance proceeds should be applied as a collateral source to the applicant's economic loss, the new economic loss exhibits submitted by the Attorney General should reflect an appropriate adjustment for the actual amount of collateral source benefits received by the applicant from the offender's insurer.

IT IS THEREFORE ORDERED THAT:

1. The July 30, 1996 order of the single commissioner is REVERSED;

2. This claim is remanded to the single commissioner and referred to the Office of the Attorney General for further investigation and a new finding of fact and recommendation addressing the applicant's additional economic loss, including that portion of the applicant's State Auto Insurance recovery that was paid in attorney fees and not realized by the applicant;

3. The Attorney General shall file the new finding of fact and recommendation on or before May 20, 1997;

4. The applicant may respond to new finding of fact and recommendation within twenty-one days after it is filed by the Attorney General;

5. The single commissioner shall subsequently determine the claim;

6. Costs be assumed by the reparations fund.

*Judgment accordingly.*

KARL H. SCHNEIDER, STEVEN A. LARSON and PHILLIP E. PARISI, Commissioners, concur.